The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the brief and oral argument presented by plaintiff's counsel before the Full Commission. The appealing party has shown good ground to reconsider the evidence.
At the hearing level the Attorney General's Office offered no medical evidence to rebut the plaintiff's expert medical witnesses or to support its position that the plaintiff is not disabled from work. At the Full Commission level, the Attorney General's Office failed to submit a response brief or to appear at the oral arguments before the Full Commission.
The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the development of the alleged occupational disease, an employer/employee relationship existed between defendant and plaintiff.
2. The parties were subject to the provisions of the North Carolina Workers' Compensation Act.
3. The North Carolina Industrial Commission has jurisdiction to hear this matter.
4. At the time of the development of the alleged occupational disease, plaintiff's average weekly wage was $408.30, yielding a compensation rate of $269.48.
5. The date of plaintiff's final separation from employment with defendant was May 5, 1994.
6. The medical records of Dr. Donald R. Schulte, Dr. Vinod Vallabh, and Richmond Memorial Hospital were stipulated into evidence.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff graduated from high school in 1977. He worked as a welder's helper for L.C. Dewitt for three years. He then worked for R. L. Altmen as an assistant manager for a retail store.
2. In 1983, plaintiff became a correctional officer with the North Carolina Department of Correction at Randolph Correctional Institution. To become a correctional officer, plaintiff had to be certified by the North Carolina Criminal Justice Education and Training Standards Commission.
3. During his employment, plaintiff was armed with a gun and worked in segregation, on the towers, and on the road squad.
4. Beginning in 1988, plaintiff was assigned to the road squad. Plaintiff's duties included strip-searching inmates prior to their entering the road squad bus, traveling on the bus, supervising the inmates while on the road, and returning the inmates to the unit. While traveling on the bus, plaintiff was separated from the inmates by a metal cage.
5. During the six years plaintiff worked on the road squad, only one inmate attempted to escape. Because of potential danger to innocent bystanders, plaintiff did not use his weapon on that occasion. The inmate was eventually apprehended by other law enforcement officers.
6. Plaintiff was directly involved in one other incident involving an escaped inmate. Plaintiff rode in a vehicle searching for the inmate, who was apprehended by others.
7. Plaintiff also was concerned about two other inmate escape attempts, one involving the shooting of a correctional officer at another prison unit and one involving a capture of an escapee near his house.
8. Plaintiff was never involved in a physical confrontation with any inmate but did on occasion break up fights between inmates. Prior to 1991, plaintiff sustained an injury to his knee while on duty, but the injury was not caused by any direct involvement with inmates. Plaintiff also was frequently verbally threatened by inmates.
9. In 1990, plaintiff sought treatment form his family doctor, Dr. Rankin, for vomiting episodes associated with stress. In 1991, plaintiff was treated in the emergency room and then subsequently saw Dr. Vinod Vallabh for vomiting and rapid heartbeat. Dr. Vallabh determined that plaintiff suffered from panic attacks and referred plaintiff to a psychiatrist, Dr. Donald Schulte. Plaintiff saw Dr. Schulte once in 1991 and did not return for several years.
10. In 1993, plaintiff began missing work because of the vomiting, spitting up blood and panic attacks. Department of Correction personnel staff counseled plaintiff concerning his absences which usually occurred on Fridays or Mondays.
11. On April 12, 1994, plaintiff returned to Dr. Schulte seeking treatment for physical problems, including rapid heartbeat, nausea, inability to sleep, shortness of breath, worrying, sweating, frequent nightmares and dizzy spells. Plaintiff experienced occasional nausea and vomiting when he was preparing to go to work or driving to the work site. Dr. Schulte wrote plaintiff out of work, diagnosing "Psychological Factors Affecting Physical Condition," which means that stress causes his physical illnesses. The major stress factor was his employment. The parties stipulated that plaintiff's last date of employment was May 5, 1994.
12. Dr. Schulte prescribed an anxiolytic drug to treat the anxiety that was responsible for a number of plaintiff's symptoms, as well as an antidepressant. Dr. Schulte continued to see plaintiff every two weeks until the frequency decreased at the time of the initial hearing before the Deputy Commissioner to about once a month.
13. Plaintiff's employment placed him at a higher risk for developing the occupational disease of Psychological Factors Affecting Physical Condition than the public in general. Plaintiff's employment was a significant contributing factor in the development of his illness, even though there were other causal factors involved which were unrelated to his job.
14. As a result of plaintiff's occupational disease he was unable to work beginning May 5, 1994, and is unable to return to employment as a guard with the Department of Corrections. Defendant has not offered plaintiff suitable alternative work since May 5, 1994. As of the date of the hearing before the Deputy Commissioner plaintiff had not reached maximum medical improvement, although his condition was significantly improved.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As of May 5, 1994, plaintiff developed the psychological disorder, Psychological Factors Affecting Physical Condition, which was an occupational disease due to causes and conditions characteristic of and peculiar to his employment which was not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13). Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979);Pulley v. City of Durham, 121 N.C. App. 688,468 S.E.2d 506 (1996).
2. Plaintiff is entitled to receive compensation at the rate of $269.48 per week for the temporary total disability he sustained as a result of this occupational disease beginning May 5, 1994, and continuing thereafter until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this occupational disease. N.C. Gen. Stat. § 97-2(19); § 97-59.
 ***********
Based upon the above findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay compensation to plaintiff for temporary total disability at the rate of $269.48 per week beginning May 5, 1994 when he stopped working and continuing until further Order of the Commission. Such amounts as have accrued shall be paid in a lump sum, subject to the attorney fee approved below.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his occupational disease.
3. An attorney fee in the amount of twenty-five percent of the compensation due plaintiff is hereby approved for plaintiff's counsel. This amount shall be deducted from the accrued compensation due plaintiff and paid directly to counsel. Thereafter, defendant shall forward every fourth compensation check directly to plaintiff's counsel.
4. Defendant shall pay the costs of this appeal.
This ___ day of May, 1998.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ___________________ THERESA STEPHENSON DEPUTY COMMISSIONER
LKM/bjp